UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KHALEEQ A. MUSE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, V.H. GONZALEZ, O.A. FURLAN,<br><br>Defendants. | Case No. 1:24-cv-06108<br><br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Khaleeq Muse, proceeding pro se, brings this case under 42 U.S.C. § 1983 and Illinois law against the City of Chicago and two officers involved in his May 11, 2024, arrest. Defendants move to dismiss. [20]. For the reasons below, the motion is granted. Plaintiff is granted leave to file an amended complaint if he believes he can do so consistent with this order and his obligations under Rule 11 of the Federal Rules of Civil Procedure. If plaintiff does not file an amended complaint by September 5, 2025, the court will enter final judgment.

**BACKGROUND**

According to the complaint, [1],[1] Khaleeq Muse was sitting in his car in the back of a family member's house on May 11, 2024, when Officers O.A. Furlan and V.H. Gonzalez,[2] both dressed in plain clothing with an embroidered police star (the complaint does not specify where the officers wore their police stars), approached him. *Id.* at 2. When the officers approached, Muse was on his phone talking to friends and watching TV. *Id.* The car was not running. *Id.*

The officers stated that a stolen vehicle was left abandoned on the property. *Id.* When they approached the car, they saw a handgun. *Id.* Though the complaint does not say so expressly, liberally construed it alleges that the officers arrested Muse. *See* Fed. R. Civ. P. 8(c) ("Pleadings must be construed so as to do justice."); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

[2] The complaint does not provide either officer's first name.

'to be liberally construed." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). It also alleges that Furlan and Gonzalez wrote false police reports. [1] at 2.

Although the facts alleged in the complaint are minimal, the defendants attached body-worn camera footage that provides more detail. [20-1]; [20-2]. Muse referenced this footage in his complaint, arguing that "the audio video will support that plaintiff['s] 4th amendment rights were violated." [1] at 2. Accordingly, the court can consider the footage. *See Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (explaining that a court "may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim"). In doing so, however, the court "views the video in the light most favorable to" Muse. *Id.* at 679.

The footage shows three officers approaching the vehicle (which was parked in an alley between two houses), telling Muse that he could not block the alley. [20-1] at 01:57–02:10. (Furlan and Gonzalez do not dispute that they were two of the three officers.) Another individual—not Muse or any of the three officers—opened the back driver-side door and appeared to place something in the seat. *Id.* at 02:29–02:42. As Officer Gonzalez approached the car and stood near the open door, his body-worn camera footage shows a handgun in plain view, behind the driver's seat. *Id.* at 02:44–02:47. Gonzalez asked, "Who has a FOID CCL?" (i.e., a Firearm Owners Identification (FOID) card or a Concealed Carry License (CCL). *Id.* at 02:50. The answer, if any was given, is inaudible. Officer Gonzalez then ordered the other individual (who at some point had entered the vehicle) out of the vehicle and asked Muse if he had a FOID or CCL. *Id.* at 02:51–02:58. The answer to this inquiry is also inaudible. Gonzalez then ordered Muse out of the car. *Id.* at 03:03–03:12. While another officer handcuffed him, Muse told the officers that the car was not his. *Id.* at 03:43–03:47. The other individual was also handcuffed. *Id.* at 03:20–03:24. After further investigation, the officers learned that the other individual had a FOID card, *id.* at 10:07–10:09, while Muse did not, [20-2] at 05:55–06:40.

The defendants also submitted two certified statements of disposition, one relating to Muse's 2013 prosecution for identity theft and unlawful possession of a credit/debit card, [20-4], and another relating to the 2024 arrest at issue in this case, [20-3]. Although these documents are not referenced in the complaint, the court can consider them at the pleading stage because they are matters of public record. *Brown v. Star*, 494 F. Supp. 2d 914, 916 (N.D. Ill. 2007) (considering a certified statement of disposition at the pleading stage).

The certified statement of disposition from the 2013 identity theft case indicates that Muse pled guilty to one count of unlawful possession of a credit or debit card in violation of 720 ILCS 5/17-32(b), a fourth-degree felony under Illinois law, *see* 720 ILCS 5/17-32(c)(2). [20-4] at 1, 8.

The certified disposition from the 2024 arrest at issue here indicates that Muse was charged with unauthorized use of a weapon in violation of 720 ILCS 5/24-1.1(a), and parking in an alley in violation of City of Chicago Municipal Code § 9-64-130(a). [20-3] at 1. On May 12, 2024 (the day after Muse's arrest), Judge Charles S. Beach found probable cause to detain Muse. *Id.* On August 5, 2024, the felon in possession charge was dismissed *nolle prosequi,* and the parking violation was nonsuited. *Id.* at 4. The certified disposition does not specify whether Muse remained in custody in the interim.

On July 19, 2024—two and a half weeks before the charges were dismissed—Muse filed his complaint in this court.[3] [1]. He named Officers Furlan and Gonzalez and the City of Chicago as defendants. *Id.*

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Ord. of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In deciding the motion to dismiss, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

For the reasons explained previously, the court can consider the body-worn camera footage, [20-1], [20-2], and certified statements of disposition, [20-3], [20-4], attached to defendants' motion to dismiss, in addition to the allegations in the complaint. *See Esco*, 107 F.4th at 678; *Brown*, 494 F. Supp. 2d at 916. The court must view these exhibits "in the light most favorable to the plaintiff." *Esco*, 107 F.4th at 679.

## DISCUSSION

Muse's complaint indicates that he seeks relief for "false arrest, illegal detainment, fraud, lying under [oath] and denying citizens honest government service." [1] at 3. It also references the Fourteenth Amendment's Due Process and

---

[3] Because the state court proceedings have now concluded, the court need not decide whether abstention under *Younger v. Harris*, 401 U.S. 37 (1971), would have been warranted at the outset of this case had the court been made aware of those proceedings. *See Wilson v. Ill. Dep't of Fin. & Pro. Regul.*, 871 F.3d 509, 511 (7th Cir. 2017) ("Because state disciplinary proceedings and litigation have ended, *Younger* no longer requires abstention."); *cf. Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) (holding that *Younger* abstention permits a district court to stay, but not to dismiss, "claims for monetary relief that cannot be redressed in the state proceeding").

3

Equal Protection Clauses, *id.*; *see* U.S. Const. amend. XIV, § 1, and an alleged "practice and pattern of the Chicago police department," [1] at 3; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In his response to the motion to dismiss, Muse adds references to fabrication of evidence; Article I, Section 8 of the Illinois Constitution (Illinois's analogue to the federal Sixth Amendment); and malicious prosecution under Illinois law.[4]

In light of the requirement to construe pro se filings liberally, *see Erickson*, 551 U.S. at 94, the court understands plaintiff to have raised the following theories: (1) Fourth Amendment false arrest; (2) Fourth Amendment unlawful investigatory stop; (3) state law false arrest; (4) state law false imprisonment; (5) Fourth Amendment malicious prosecution; (5) state law malicious prosecution; (6) Fourth Amendment fabrication of evidence; (7) Fourteenth Amendment fabrication of evidence; (8) violation of Article I, Section 8 of the Illinois Constitution; (9) *Monell* liability; (10) state law fraud; and (11) honest services fraud.

## I. Federal Theories

The court will first consider Muse's potential legal theories under federal law. Those theories can be divided into three groups: (1) those pertaining to the circumstances of the arrest; (2) those pertaining to Muse's subsequent detention and prosecution; and (3) other theories. The court will discuss each in turn.

### A. Muse's Arrest

#### 1. Fourth Amendment False Arrest

Muse has not stated a Fourth Amendment false arrest claim because the arrest was supported by probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."). "Probable cause to arrest exists when the facts and circumstances that

---

[4] Defendants argue that the court should not consider these theories because they were not raised in the complaint. Thus, defendants argue, the complaint did not put them on notice of these theories. Although this argument finds some support in older cases, *see, e.g.*, *Resol. Tr. Corp. v. Gallagher*, 800 F. Supp. 595, 598 (N.D. Ill. 1992) ("Notice pleading merely requires that in order to state a claim for relief, the plaintiff must give notice to the defendant of the theory behind the claims alleged and the basic facts which support those allegations."), it is inconsistent with the Supreme Court's holding in *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam). Under *Johnson*, a complaint need only "plead facts sufficient to show that [plaintiff's] claim has substantive plausibility." *Id.* at 12. A complaint that "informed [defendants] of the factual basis for [plaintiff's] complaint" is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 11.

are known to the officer reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (internal alterations omitted) (quoting *Holmes v. Vill. of Hoffman Ests.*, 511 F.3d 673, 679 (7th Cir. 2007)).

Defendants primarily argue that the officers had probable cause to believe that Muse had committed the crime of unauthorized use of a weapon (UUW). 720 ILCS 5/24-1.1(a) provides in relevant part:

> It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business . . . any firearm . . . if the person has been convicted of a felony under the laws of this State or any other jurisdiction. . . .

Defendants' argument based on the UUW statute raises two difficult questions. First, there are lingering questions about whether felon-in-possession statutes can be applied to non-violent offenders like Muse without violating the Second Amendment right to keep and bear arms. *See United States v. Carbajal-Flores*, No. 24-1534, 2025 WL 1948914, at *9 (7th Cir. July 16, 2025) ("The historical justification for disarming some felons may not support disarming all felons.").

Second, although Muse has been convicted of a fourth-degree felony—unlawful possession of a credit or debit card, *see* [20-4]—"probable cause depends on information known to the police at the time, not on how things turn out." *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994). It is not clear whether Officers Furlan and Gonzalez had any indication that Muse was a felon at the time of the arrest. If Muse was not a felon, then his possession of a gun would have been both (1) beyond the scope of Illinois's felon in possession statute and (2) presumptively protected by the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). Thus, it is not clear it could, without more, support probable cause. *Cf. United States v. Wilson*, No. 23-30777, 2025 WL 1982767, at *4 (5th Cir. July 17, 2025) ("[A]n officer cannot search or seize a person simply because he is keeping or bearing a firearm . . . .").

The court need not grapple with these issues, however, because Furlan and Gonzalez clearly had probable cause to believe that Muse had committed a different offense: blocking the alley. City of Chicago Municipal Code § 9-64-130(b) provides:

> It shall be unlawful to park a vehicle in an alley in such a manner or under such conditions as to leave available less than ten feet of the width of the roadway for the free movement of vehicular traffic or to block the entrance to any abutting property.

The body-worn camera footage submitted by defendants clearly shows Muse parked in a way that left less than ten feet of clearance for traffic to pass. [20-1] at 02:00. The complaint also alleges that the car was not running, and that Muse was in the driver's

seat. [1] at 2. These facts establish probable cause to believe that Muse had violated the alley-blocking ordinance—or, at minimum, that he was about to do so. *See Braun*, 56 F.4th at 548 (noting that "[p]robable cause to arrest exists when the facts and circumstances . . . support a belief that the individual . . . is *about to commit* a crime" (quoting *Holmes*, 511 F.3d at 679)).

Admittedly, arrest would be a harsh sanction if a parking violation was the only offense of which Muse was suspected. Parking violations are punishable only by fines, not imprisonment. *See* City of Chicago Municipal Code § 9-64-230. But in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court rejected the argument that the Fourth Amendment prohibits arrests for "nonjailable traffic offenses." *Id.* at 349; *see also Thomas v. City of Peoria*, 580 F.3d 633, 638 (7th Cir. 2009) ("But the Fourth Amendment does not forbid an arrest for a 'nonjailable' offense." (quoting *Atwater*, 532 U.S. at 318)). The Municipal Code also provides that parking violations are civil (rather than criminal) offenses. City of Chicago Municipal Code § 9-64-230. But the Fourth Amendment also does not forbid arrest for purely civil offenses. *See Thomas*, 580 F.3d at 638; *Murphy v. Salgado*, No. 1:13-cv-04566, 2014 WL 114266, at *1 (N.D. Ill. Jan. 13, 2014). Thus, the court in *United States v. Churchill*, 440 F. Supp. 3d 919 (N.D. Ill. 2020), found probable cause for a violation of the alley-blocking ordinance sufficient to justify a Fourth Amendment seizure. *Id.* at 924; *see also Murphy*, 2014 WL 114266, at *1 (dismissing a Fourth Amendment false arrest claim because the officers had probable cause to believe the plaintiff rode his bicycle on a sidewalk). Nor does the likelihood that Muse would not have been arrested if blocking the alley was the only offense of which he was suspected render the arrest unconstitutional. *See Devenpeck*, 543 U.S. at 153 (holding that "an arresting officer's . . . subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause").

### 2. Unreasonable *Terry* Stop

Muse also argues that, when the officers initially approached him, they performed an unreasonable investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). "A *Terry* stop lies somewhere between a consensual encounter and a full-blown custodial arrest." *United States v. Harris*, 218 F. App'x 525, 527 (7th Cir. 2007). Even assuming that the officers' initial approach was a *Terry* stop—rather than a consensual encounter outside the scope of the Fourth Amendment, *see United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020)—the stop did not violate the Fourth Amendment. "The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity'"—also known as a reasonable suspicion. *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Because, as discussed above, the officers "had probable cause to make an arrest, [they] necessarily had the reasonable suspicion required to conduct an investigatory stop." *Jones ex rel. Jones v. Webb*, 45 F.3d 178,

182 n.3 (7th Cir. 1995). Accordingly, Muse has not stated a Fourth Amendment claim under *Terry*.

### 3. Equal Protection

In addition to prohibiting arrests without probable cause, the Constitution also (via the Fourteenth Amendment's Equal Protection Clause) "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001).

Here, Muse's allegations do not state a plausible claim under the Equal Protection Clause. Although the complaint states that "the officers were racial profiling," [1] at 2, that is a mere conclusion, which the court need not accept as true for purposes of a motion to dismiss. *See Iqbal*, 556 U.S. at 680–81 (declining to credit a similar allegation because it was conclusory). The complaint provides no further support for Muse's equal protection claim. His response to the motion to dismiss provides slightly more detail, arguing that Muse was targeted because he is black and lives in an all-black neighborhood, while the arresting officers "are not of the same nationality" as plaintiff and, according to Muse, "have a history of racial profiling and harassing African Americans." [24] at 6. But "a difference in race between the person stopped and the officer" does not establish a discriminatory purpose. *Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996). And while "a series of official actions taken for invidious purposes" may provide evidence of discriminatory intent, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977), Muse's allegations about a supposed history of racial profiling (made for the first time in response to the motion to dismiss) are too vague and conclusory to support an inference that his arrest was motivated by invidious discrimination. Muse has not "nudged his claims of invidious discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation and alterations omitted).

## B. Muse's Subsequent Detention & Prosecution

### 1. Malicious Prosecution

Although Muse expressly raises only a state law malicious prosecution claim, the court will also consider whether he has stated a federal malicious prosecution claim—which is "sometimes referred to as a claim for unreasonable seizure pursuant to legal process," *Thompson v. Clark*, 596 U.S. 36, 42 (2022), or as a "claim for wrongful pretrial detention," *Lewis*, 914 F.3d at 474. "To succeed on such a claim, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). Unlike with a Fourth Amendment false arrest claim,

7

however, the existence of one charge supported by probable cause does not "create a categorical bar" to a claim based on other charges not supported by probable cause. *Id.* Thus, unlike with the claims based on Muse's arrest, the existence of probable cause for the parking violation does not necessarily defeat Muse's malicious prosecution claim.

That claim fails, however, for a different reason: Muse cannot rebut the presumption of probable cause that arose when Judge Beach found probable cause to detain him. "Judicial determinations of probable cause are ordinarily entitled to a presumption of validity." *Washington v. City of Chicago*, 98 F.4th 860, 869 (7th Cir. 2024). "To overcome this presumption, plaintiffs must show 'that the officer . . . [1] "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and [2] that the false statements were necessary to the judicial officer's determination that probable cause existed for the [detention].""" *Id.* at 863 (quoting *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). While Muse alleges that the arresting officers' "reports are false," [1] at 2, he never indicates what false statements were included in the police report. That conclusory allegation cannot overcome the presumption of probable cause.

### 2. Fabrication of Evidence

Muse also has not stated a claim for fabrication of evidence. Recent Seventh Circuit cases have "clarified the contours of constitutional claims based on allegations of evidence fabrication." *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020). Such claims can proceed under any of three theories, each with its own requirements. First, "false arrest or pretrial detention based on fabricated evidence" may violate "the Fourth Amendment right to be free from seizure without probable cause." *Id.* Second, "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). Finally, "misconduct of this type that results in a conviction might also violate the accused's right to due process under the rubric of *Brady v. Maryland*, 373 U.S. 83 (1963) . . . if government officials suppressed evidence of the fabrication." *Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019).

Muse has not stated a claim under any of the three theories. First, he has not stated a fabrication claim under the Fourth Amendment because "[t]he standard for pretrial detention is probable cause." *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020). As discussed above, Muse cannot rebut the presumption of probable cause that attached when Judge Beach found probable cause. Second, he has not stated a fabrication claim under either due process-based theory because the only deprivation of liberty he suffered was his pretrial detention, which is cognizable only under the Fourth Amendment, not the Due Process Clause. *See, e.g.*, *Lewis*, 914 F.3d at 475. Accordingly, Muse has not stated a fabrication of evidence claim.

8

### C. Other Federal Theories

#### 1. Honest Services Fraud

To the extent Muse's claims rely on the honest services fraud statute, 18 U.S.C. § 1346, they fail because the statute does not create a private right of action. *See Seamon v. Shapiro*, No. 24-1451, 2025 WL 88837, at *4 (3d Cir. Jan. 14, 2025) (per curiam) ("[Plaintiff] has no private right of action to pursue violations of the criminal statutes that penalize honest services fraud."). In other words, while the honest services fraud statute allows federal prosecutors to bring criminal charges against government officials who accept bribes or kickbacks, *see Kelly v. United States*, 590 U.S. 391, 399 (2020), it does not allow private citizens to sue alleged violators.

#### 2. *Monell* Liability

Muse also has not stated a claim for municipal liability under *Monell*. Because Section 1983 does not allow for vicarious liability against municipalities, "a plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Even assuming the existence of a policy or custom, Muse has not stated a claim under *Monell* because, as explained above, he has not adequately alleged a violation of federal law. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam).

## II. State Law Theories

Having found that Muse's complaint does not state a claim under federal law, the court will follow the "usual practice" of declining to exercise supplemental jurisdiction over his state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see* 28 U.S.C. § 1367(c)(3). Those claims are thus dismissed without prejudice.

## CONCLUSION

For these reasons, defendants' motion to dismiss, [20], is granted. The complaint, [1], is dismissed without prejudice for failure to state a claim. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem . . . ."). If Muse believes he can address the issues identified in this order, Muse may submit an amended complaint by September 5, 2025. Any amended complaint must comply with Rule 11, which provides that by signing a pleading, a party represents to the court that the party's claims are warranted by existing law and that the factual contentions contained within the pleading have evidentiary support or likely will have evidentiary support after further investigation. *See* Fed. R. Civ. P. 11(b). If Muse does not file an amended complaint

9

by September 5, 2025, the court will enter final judgment dismissing Muse's federal claims with prejudice and his state claims without prejudice.

Dated: August 15, 2025 /s/ Martha M. Pacold